My client has had five major reconstructive surgeries and she's presently on methadone for the pain. As I was looking at this last night, I was noticing the ALJ said that he could not tolerate prolonged sitting and she could not tolerate prolonged walking. Dr. Waldron wrote that she would not be able to tolerate frequent changes of position. That's at 201A in the transcript. We're looking at whether she was reasonable in saying that she needed to elevate her legs. I think if we look at what all the limitations are that she has, that the doctors have said, that the ALJ has said, that clearly if you can't change position frequently but you can't tolerate being in a prolonged position for very long, you've got a problem. And that's why she needs to elevate her legs. I think that's kind of the backdrop in terms of looking at this case of whether she's being reasonable or not. Now, one of the pieces that I wanted to focus on, because it does relate to the issue of listing, meeting or equaling the listing, or actually equaling the listing, is this issue of her somatization disorder. The ALJ found that she had no mental impairments whatsoever and didn't include any in his residual functional capacity assessment of her. And the commissioner has taken the position that having this somatization disorder means that you exaggerate your symptoms. And I think I go into it in the brief. I define that condition. But as I understand it, it's taking a psychological conflict and changing that into bodily symptoms. So is the essence of your, this is what I was a bit troubled by in this case, there seems to be a mental illness element here that isn't addressed, at least not under the case law in this circuit that says if the ALJ doesn't, if there's a credible or colorable mental illness claim, then there's a checklist that the ALJ is supposed to go through. And that wasn't done here. That's right. But I couldn't tell precisely what the mental illness claim was, whether that was an independent claim or, as you're suggesting, it's an explanation for the overreaction, if you will, the emotionalization, whatever somatoform is all about. I think it's difficult when it's this particular mental disorder. On the MMPI-2, many of my clients have invalid MMPIs because they exaggerate their emotional upset. In this case, she minimized her emotional upset, which indicates she doesn't believe that she has a mental disorder. And she sees this as all focused on her knees. Now, she has some very good objective findings of significant knee problems. Nobody disagrees with that. Everybody agrees she has some pain. The only question is how much pain does she have? So what I think when you have a combination of the objective findings of pain and you and leads to you focusing your psychological conflict onto this condition, you have to take that into account in looking at how much pain does she have and does that prevent her from working. I think the answer is clearly yes in this case. But are you saying that the ALJ did not look at the mental illness factors? He did not. And what I'm trying to figure out also along those lines is how that was brought up to the ALJ in terms of, I see the passing reference with Dr. Strong, like a sentence or so. How was it sort of in front of him so he would know to really assess that? Well, he actually did, he addressed it because it was in the record. And I actually, I cannot remember if they, if the hearing attorney argued the mental disorder issue in his argument. But then the ALJ referenced what, the first step or the second in the mental? He found that, well, in his decision he does address Dr. Strong's findings. He found, but he found that she did not have a severe mental impairment. And then, but then in discrediting her testimony that she needs to elevate her legs and the kind of pain she has, he then used the fact that she was diagnosed with a somatization disorder to say that that means she's inclined to exaggerate her physical symptoms. So it is kind of an odd way at this. And what about the hypothetical question? Did that include any kind of mental illness? No. To the vocational expert? No, it did not. I will say that Dr. Strong did not specifically identify what the limitations were, what came from the somatization disorder, except to say that she has it and that she also has some PTSD-like symptoms that she thought led her to have this chronic hypervigilance and a need for control and that created muscle tension and, I can't remember the other thing, but it was along those lines that there was this muscle tension created by this need for look at restrictions in activities of daily living or social functioning or concentration, and she did not make that assessment. But at a minimum, I would submit that the fact that she was diagnosed with somatization disorder should not have been a basis for discrediting her testimony. That would be the main point. I think I've addressed other issues in my brief, and perhaps I should reserve my other time unless you have a specific question. That's fine. We'll hear from the Commissioner. Good morning, Your Honors. David Burdett, representing the Commissioner. First of all, before we get into the issue of the mental impairments, which I think is what this case is going to really turn on, I'd like to correct the statement at the outset. The inquiry in the social security cases is not ever whether the plaintiff was reasonable in asserting that she had certain impairments. The inquiry is whether the ALJ, as the trier of fact, was supported by substantial evidence in his factual determinations. It could be that the plaintiff was reasonable and there was, you know, reasonable evidence to support either interpretation. And in such a case, it's the ALJ's factual findings that are to be upheld. So that is important to remember. With regard to the issue of the discrediting of claimant because of her somatization disorder, she was discredited for a lot of reasons. She was discredited. The ALJ recited her activities. That may be, but could you address our law which says that if there is a credible or colorable claim of mental illness, your agency has regulations that say, okay, in that case, ALJ, please go through this checklist and do it and do it and now it's in your opinion. And if you don't, then it has to go back. We do, Your Honor. And if they don't, then it has to go back. Unless you would find that it's a harmless error. And that would be the argument that I would urge here. The absence of a PRTF, I don't think is fatal to the case. I mean, what's going on here is this person has pain in her knees. And whether that is all real, or I won't say real, but whether that is all because of the physical damage that she's had to her knees, or whether part of it is because of the somatization disorder that Dr. Strong made reference to. Here's my, just to make sure I'm going to focus you, because I've read through and there are references in the ALJ opinion about the somatiform, but he doesn't address it in the ALJ opinion. Taking your opening point, if this particular person has a level one of pain, but because of a mental illness it registers with her at level two, which is incapacitating, would that not then be, not a question of whether she's reasonably experiencing pain. She may be unreasonable, but it's attributable to a mental illness. And that's what I understood the claim here to be. And he is using that mental illness to say, she's exaggerating. She exaggerates, therefore I don't believe her. But if in fact in her mental registry, it's real to her and it does incapacitate her, isn't that what we need to know that the ALJ specifically addressed and therefore has resolved? Then we'd be looking to see whether or not he's resolved that with substantial evidence. Well, I think that's true, Your Honor. I think that's right. And that, I still would like to make the argument, though, that if you look at this case, you can find that the lack of the procedure is a harmless error at worst. I think that, as you mentioned, the ALJ took into account what Dr. Strong had to say. This is all based on Dr. Strong's opinion on page 329 of the record. How sufficient was Dr. Strong? Dr. Strong did not go through a lot of the factors that she might have had to go through in other cases. In other words, she didn't do that here. Well, no, she didn't, Your Honor. But I will say, though, that if there is a credible claim of mental illness, then it's incumbent on the ALJ to go back and develop a record. And if Dr. Strong... And shouldn't he have to do that here? Well... I mean, I guess I know that it's hard to kind of, I don't want to say concede, but kind of acknowledge. But you've come about as close as we can to saying, well, it wasn't quite followed here. I'm not sure how that could be harmless, particularly when you combine it with the credibility finding that was based in part, although on other things, on this most logical and fairest solution, be just send it back and then the evidence will fall where it may and you may or may not be back here at all. Well, just to answer, first of all, just to answer a little sub foot of that question on the credibility finding, there are at least two and I think three other feet for the credibility finding. So if one basis for a bad credibility finding is knocked out, there are plenty of other reasons for the credibility finding. On that point, though, how do we ever know, you know, usually I can understand they amalgamate these credibility findings and then they say, on balance, you're not credible. But how do we know in the mental formula of the ALJ how much emphasis was put on one credibility finding versus another and whether without, you know, one of the legs of the chair, the whole thing would fall apart. How can we do that on you? It doesn't matter. If there's one that's good, that's enough. Well, but how do we know that overall that there would have been a credibility finding that would have affected the outcome? Well, you don't know, but I think, Your Honor, you don't have to make an inquiry into it. So as long as there's just one, that's okay? Yes. That's our position. All right. Now, on the bigger question, I think that what it's going to come down to philosophically is do you accept that whatever this person's, whatever this person's, whatever the genesis of it is, the problem that this person is experiencing is pain, whether phantom pain or real, I keep saying real pain, but I'm just, you know. No, we understand. Yeah. And that's why she needs all this medication or believes that she needs all this medication and keeps going back and back for more and more of it. And the question is, could she get up and walk to the extent that's necessary to do sedentary work? I don't think that when you look at the record, there's any reason to feel that she could not go ahead and do the amount of walking and sitting and standing that's necessary to do sedentary work. And I think that the ALJ developed the record pretty well. I do agree that there is a problem with the issue of, Dr. Strong says somatization disorder, and I would even go farther than that and say Dr. Strong also suggests an addictive disorder, which opens up a whole other field of inquiry if indeed it's going to be remanded. And if it's going to be remanded, then I think that that should be looked at as well. But I do think that a permissible outcome and a good outcome based on what this person's limitations really are would be to find that that's a harmless error, that the ALJ developed the record that this person can, in fact, do sedentary work, which is really not at all a demanding work. And that's our position. Thank you. Thank you. Thanks for your comment. Just to follow up a few things. One is Dr. Hill's report, he's the pain specialist. I think as things sit now, he answers that whole issue of excessive pain medication consumption. So I think that should really be looked at. He's the only pain specialist who's considered this. I know the other doctors were extremely alarmed at the amount she was using. But Dr. Kronk did say that he thought she had become tolerant to Vicodin. And then Dr. Hill said that these short-term opiates just don't work for this kind of pain problem. He's a pain specialist, Dr. Hill? Dr. Hill at the Pain Management Center, I believe. So he's saying it's premature to say that she has been drug-seeking or has been using these excessively until we see how she does on the longer term, a longer acting opiate. So that's one thing. And then the other thing is, and this is something I really focused on in my brief, not in my presentation, the issue of equaling the listing just simply has not been addressed. It was not addressed by the ALJ, other than to say it just in an off-the-cuff way, with no explanation. Dr. Curley, the agency doctor, non-examining internist who looked at the case, did not address equaling. The commissioner has not addressed the equaling argument except to say that Dr. Curley's report was sufficient. And the listing contemplates a severe knee impairment in one knee. She has this in both knees. And it has never, there has not been any discussion or explanation of the ALJ on the issue of does two, do two impaired knees equal the listing. And I'd submit that the somatoform disorder also has to be thrown into the equaling the listing because the case law is clear that all of the impairments have to be considered. And Lester v. Shader actually discusses that in some way. And would that be your argument against the harmless error issue or argument that the commissioner makes? I'd like to say we have an orthopedic surgeon who says she meets the listing. But as with many of these listing cases, he doesn't break out all the elements of the listing. Dr. Curley doesn't really break out all the arguments. We're not doctors. We're lawyers. We really need the doctors to say that in a little more detail. So I think the argument really is has the case been analyzed properly at stage two, does she meet or equal the listing? And if not, then does she have a mental disorder that needs to be addressed at step four and five? Thank you. Thank you. Thank you both for your arguments. Thank you. Dijkstra v. Barnhart is submitted. And that will conclude our arguments for this morning. All rise. This court for the session stands adjourned.
judges: McKeown, Fisher, Gonzalez